## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEITH SMITH, derivatively on behalf of ZION OIL & GAS, INC.,<br><br>    Plaintiff,<br><br>    vs.<br><br>VICTOR G. CARRILLO, MICHAEL B. CROSWELL, JR., JOHN M. BROWN, DUSTIN L. GUINN, FORREST A. GARB, KENT S. SIEGEL, PAUL OROIAN, WILLIAM H. AVERY, THE ESTATE OF YEHEZKEL DRUCKMAN, LEE RUSSELL, JUSTIN W. FURNACE, GENE SCAMMAHORN, RALPH F. DEVORE, and MARTIN M. VAN BRAUMAN,<br><br>    Defendants,<br><br>    and<br><br>ZION OIL & GAS, INC.,<br><br>    Nominal Defendant. | **C.A. No.** _____<br><br><br><br>**DEMAND FOR JURY TRIAL** |

## <u>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT</u>

## <u>INTRODUCTION</u>

Plaintiff Keith Smith ("Plaintiff"), by his undersigned attorneys, derivatively and on behalf of Nominal Defendant Zion Oil & Gas, Inc. ("Zion" or the "Company"), files this Verified Shareholder Derivative Complaint against Individual Defendants Victor G. Carrillo, Michael B. Croswell, Jr., John M. Brown, Dustin L. Guinn, Forrest A. Garb, Kent S. Siegel, Paul Oroian, William H. Avery, the Estate of Yehezkel Druckman, Lee Russell, Justin W. Furnace, Gene Scammahorn, Ralph F. DeVore, and Martin M. van Brauman (collectively, the "Individual Defendants" and together with Zion, the "Defendants") for breaches of their fiduciary duties as

directors and/or officers of Zion, unjust enrichment, and violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  As for his complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Zion, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Zion's directors and officers starting on March 12, 2018 and continuing through the present (the "Relevant Period").

2.      Zion is an oil and gas exploration company with a history of over 18 years of oil and gas exploration in Israel, and currently holds one active petroleum exploration license onshore Israel.

3.      Beginning March 26, 2018, a social media user and various news outlets reported that the Company was subject to an SEC investigation based on facts gathered from Freedom of Information Act ("FOIA") requests concerning Zion.

4.      On July 11, 2018, the Company filed a current report on Form 8-K with the SEC announcing that Zion had received a subpoena from the SEC to produce documents, which informed the Company of the existence of a non-public, fact-finding inquiry into the Company.

5.     On this news, the price per share of Zion common stock fell $0.44, or 11%, from the previous day's closing price, closing at $3.56 on July 12, 2018.

6.     During the Relevant Period, the Individual Defendants breached their fiduciary duties by causing the Company to fail to maintain internal controls.

7.     Also during the Relevant Period, the Individual Defendants personally made and/or caused the Company to make a series of materially false and misleading statements regarding the Company's business, operations, prospects, and legal compliance. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose that: (1) the Company was, or was soon going to be, the subject of an SEC investigation; and (2) the Company failed to maintain internal controls.  As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

8.     In light of the Individual Defendants' misconduct, which has subjected Zion, its former Chief Executive Officer ("CEO"), and its Chief Financial Officer ("CFO") to being defendants in a federal securities fraud class action lawsuit pending in the United States District Court for the Northern District of Texas (the "Securities Class Action"), the need to undertake internal investigations, and losses due to the unjust enrichment of the Individual Defendants who were improperly over-compensated by the Company and who benefitted from the wrongdoing alleged herein, the Company will have to expend many millions of dollars.

9.     The Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

10.    In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, their collective engagement in fraud, the

substantial likelihood of the directors' liability in this derivative action, the substantial likelihood of the CEO's and CFO's liability in the Securities Class Action, their being beholden to each other, their longstanding business and personal relationships with each other, and their not being disinterested or independent directors, a majority of the Zion Board of Directors (the "Board") cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1) and Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9, and raise a federal question pertaining to the claims made in the federal securities class actions based on violations of the Exchange Act.

12.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

13.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

14.     Venue is proper in this District because Zion is incorporated in this District. In addition, the Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

### Plaintiff

15.     Plaintiff is a current shareholder of Zion. Plaintiff has continuously held Zion common stock at all relevant times.

### Nominal Defendant Zion

16.     Zion is a Delaware corporation with its principal executive offices at 12655 North Central Expressway, Suite 1000, Dallas, Texas 75243. Zion's shares trade on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "ZN."

**Defendant Carrillo**

17.     Defendant Victor G. Carrillo ("Carrillo") has served as the Company's CEO from June 15, 2015 to September 1, 2018 and as a Company director from September 2010 to September 1, 2018.  According to the Company's Schedule 14A filed with the SEC on April 13, 2018 (the "2018 Proxy Statement), as of April 10, 2018, Defendant Carrillo beneficially owned 557,193 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 10, 2018 was $4.54, Carrillo owned over $2.5 million worth of Zion common stock.

18.     For the fiscal year ended December 31, 2017, Defendant Carrillo received $448,542 in compensation from the Company. This included $250,000 in salary, $137,000 in option awards, and $61,542 in all other compensation.

19.     The Company's 2018 Proxy Statement stated the following about Defendant Carrillo:

**Victor G. Carrillo**,[1] age 53, was appointed Chief Executive Officer on June 15, 2015. He served as President and Chief Operating Officer from October 2011 until June 15, 2015. He served as Executive Vice President from January 2011 until June 15, 2015. He has been a director since September 2010. From January 2011 through May 2016, Mr. Carrillo served on the Board of Directors of Magnum-Hunter Resources, a publicly traded oil and gas company exploring in the United States and Canada. Since October 2016, he has been serving on the Board of Directors of Energy Hunter Resources, a private oil & gas company exploring in Texas. Mr. Carrillo also serves on the Advisory Board of the Maguire Energy Institute at Southern Methodist University and on the Board of Directors of the Texas-Israel Chamber of Commerce. Mr. Carrillo is a petroleum geologist and geophysicist, attorney, former Abilene City Councilman, former Taylor County Judge, and for eight years served as statewide-elected commissioner of the Railroad Commission

---

[1] Emphasis in original unless otherwise noted throughout.

of Texas (the state's regulatory authority over oil and gas drilling). He has over 25 years of professional experience, much of it in the oil and gas industry, specifically in exploration and production. He holds a Juris Doctorate degree from the University of Houston Law Center, a Master of Science degree in geology from Baylor University, and a Bachelor of Science degree in geology from Hardin-Simmons University. Mr. Carrillo also received an honorary doctorate degree from Hardin-Simmons University in May 2006.

### Defendant Croswell

20.     Defendant Michael B. Croswell, Jr. ("Croswell") has served as the Company's CFO since August 2016, and has served as a Company director since May 2017.  According to the 2018 Proxy Statement, as of April 10, 2018, Defendant Croswell beneficially owned 414,500 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 10, 2018 was $4.54, Croswell owned almost $1.9 million worth of Zion common stock.

21.     For the fiscal year ended December 31, 2017, Defendant Croswell received $364,749 in compensation from the Company. This included $150,000 in salary, $178,200 in option awards, and $36,549 in all other compensation.

22.     The Company's 2018 Proxy Statement stated the following about Defendant Croswell:

> **Michael B. Croswell Jr.**, age 47, CPA, was appointed to the Board on May 1, 2017 and has been serving as Corporate Controller for the Company since April 2011. In February 2013, Michael was promoted to Vice President of Administration and in August 2016, Mr. Croswell was promoted to Chief Financial Officer. Mr. Croswell is a corporate accounting and management professional with a diverse range of industry experience. Mr. Croswell is a Certified Public Accountant since 1997 and earned his Bachelor of Business Administration degree in accounting from Stephen F. Austin State University in 1994 and earned a Master of Business Administration degree from the University of Dallas in 2013.

### Defendant Brown

23.     Defendant John M. Brown ("Brown") is the founder of the Company and has served as a Company director and the Chairman of the Board since its organization in April 2000.  He has also served as the Company's Executive Chairman since January 2010.  He also previously served as the Company's CEO in two separate instances.  According to the 2018 Proxy Statement, as of April 10, 2018, Defendant Brown beneficially owned 1,115,000 shares of the Company's common stock, which represented 1.9% of the Company's total common stock. Given that the price per share of the Company's common stock at the close of trading on April 10, 2018 was $4.54, Brown owned over $5 million worth of Zion common stock.

24.     For the fiscal year ended December 31, 2017, Defendant Brown received $632,419 in compensation from the Company. This included $249,000 in salary, a $30,000 bonus, $239,750 in option awards, and $113,669 in all other compensation.

25.     The Company's 2018 Proxy Statement stated the following about Defendant Brown:

> **John M. Brown**, age 78, is the founder of Zion Oil & Gas and has been a director and Chairman of the Board of Directors of Zion since its organization in April 2000. Mr. Brown was appointed Executive Chairman in January 2010. Mr. Brown was also appointed as Interim Chief Executive Officer on October 18, 2012 and on January 1, 2014, Mr. Brown was appointed as the Chief Executive Officer and to continue as the Executive Chairman. Previously, he served as our Chief Executive Officer from April 2000 to September 2004 and as President from April 2000 to October 2001. Mr. Brown has extensive management, marketing and sales experience, having held senior management positions in two Fortune 100 companies - GTE Valeron, a subsidiary of GTE Corporation and a manufacturer of cutting tools, where he was employed from 1966-86 and served as the corporate director of purchasing, and Magnetek, Inc., a manufacturer of digital power supplies, systems and controls, where he was corporate director of procurement during 1988-89. Mr. Brown was a director and principal stockholder in M&B Concrete Construction, Inc. from 1996 to 2003 and is an officer and director of M&B Holding Inc. (a Nevada corporation) based in Dallas, Texas, the sole shareholder of M&B General Contracting Inc. (a Delaware corporation). These companies primarily provide cement walls and floors for industrial buildings, office buildings and home developers. Prior to founding the Company, Mr. Brown had been actively pursuing a license for oil and gas exploration in Israel for many years.

His efforts led to our obtaining, in May 2000, the Ma'anit License, the precursor to the Joseph License. Mr. Brown holds a BBA degree from Fullerton College. Mr. Brown's senior management experience in two Fortune 500 companies as well as his extensive experience in the oil and gas sector in the State of Israel provide with him with the insight and vision needed to serve as CEO and chairman of our Board of Directors.

**Defendant Guinn**

26.     Defendant Dustin L. Guinn ("Guinn") has served as the Company's Executive Vice Chairman since July 2016, as the Company's President and Chief Operating Officer since September 2016, and as the Company's CEO since August 31, 2018.  He has also served as a Company director since May 2015.  According to the 2018 Proxy Statement, as of April 10, 2018, Defendant Guinn beneficially owned 335,000 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 10, 2018 was $4.54, Guinn owned over $1.5 million worth of Zion common stock.

27.     For the fiscal year ended December 31, 2017, Defendant Guinn received $465,647 in compensation from the Company. This included $250,000 in salary, $171,500 in option awards, and $44,147 in all other compensation.

28.     The Company's 2018 Proxy Statement stated the following about Defendant Guinn:

**Dustin L. Guinn**, age 41, is currently serving as the Executive Vice Chairman since July 1, 2016 and the President and Chief Operating Officer since September 13, 2016. He was appointed a director on May 1, 2015. Dustin Guinn served as Chief Executive Officer of Viking Services, in which he had acted in this capacity from June of 2011 through September 30, 2015. Mr. Guinn's primary responsibilities included operational and strategic management focusing on the growth, deployment and profitability of assets in Turkey, Northern Iraq, Hungary, Bulgaria, Serbia, Romania and other strategic countries within the Middle East, North Africa, as well as Central and Eastern Europe. Mr. Guinn has extensive experience in transactional mergers and acquisitions involving both entity and asset purchases as well as the integration of those acquisitions and was intimately involved in the growth of Viking, in terms of financial, operational, structural, and reporting and management growth since its inception in 2008. Prior to assuming the

responsibilities of CEO in 2011 Mr. Guinn served as President of Viking International and Viking Geophysical in which he leveraged his financial background and experience to focus on the continued development of operational efficiencies, reporting implementation, profitable asset deployment and accountability focusing on return on investment metrics. Mr. Guinn was integral in the procurement and negotiation of many of Viking's key long-term, ongoing service contracts and MSA's that Viking currently enjoys. Mr. Guinn has also served in a number of capacities within Viking such as CFO, Treasury Manager and Financial Analyst, which have allowed for the opportunity to have a balanced and well-rounded understanding of the business. Mr. Guinn graduated, with honors, from New Mexico State University with a Bachelor of Business Administration degree in Finance, during which time he competed in both track and field and football (Three Year Starter at Tight End) and earned a Master's Degree in Business Administration from West Texas A&M.

**Defendant Garb**

29.     Defendant Forrest A. Garb ("Garb") has served as a Company director since November 2005, and serves as Chairman of the Compensation Committee.  According to the 2018 Proxy Statement, as of April 10, 2018, Defendant Garb beneficially owned 299,147 shares of the Company's common stock.  Given that the price per share of the Company's common stock at the close of trading on April 10, 2018 was $4.54, Garb owned over $1.3 million worth of Zion common stock.

30.     For the fiscal year ended December 31, 2017, Defendant Garb received $68,092 in compensation from the Company. This included $33,000 in fees earned or paid in cash, $29,427 in option awards, and $5,665 in all other compensation.

31.     The Company's 2018 Proxy Statement stated the following about Defendant Garb:

**Forrest A. Garb**, age 88, was appointed a director in November 2005 and serves as Chairman of the Compensation Committee. Mr. Garb is a petroleum engineer who has provided independent consulting services for more than 45 years. His consulting career began with H.J. Gruy and Associates, Inc. and its successors, where he served as a vice president for four years, executive vice-president for ten years, and president for fifteen years, until leaving in 1986, following Gruy's merger into a public company. In his capacity as president, Mr. Garb contracted, performed and supervised over 12,500 projects ranging from simple evaluations to sophisticated reservoir simulations. In 1988, Mr. Garb founded Forrest A. Garb &

Associates, Inc., a privately-owned petroleum consulting firm, where he served as chairman and chief executive officer until his retirement in 2003 and sale of his interests in the company to its key employees. Prior to entering into consulting, Mr. Garb was educated in petroleum engineering at Texas A&M University (BSc and Professional MSc) and received his early training at Socony Mobil Oil Company in Kansas, Texas, Louisiana and Venezuela. Mr. Garb is a member of the Society of Petroleum Engineers and is a past President of the Society of Petroleum Evaluation Engineers. He is a member of the Association of Computing Machinery, the American Arbitration Association, the Petroleum Engineers Club of Dallas, the Dallas Geological Society, and is a member of the American Association of Petroleum Geologists. He is a charter member of The American Institute of Minerals Appraisers. He is a registered professional engineer in the state of Texas. Mr. Garb's petroleum engineering background and vast experience in the petroleum industry spanning over 45 years provide our Board with a valuable resource in assessing oil and gas prospects.

**Defendant Siegel**

32.     Defendant Kent S. Siegel ("Siegel") has served as a Company director since January 2013, and serves as a member of the Audit Committee and the Compensation Committee. According to the 2018 Proxy Statement, as of April 10, 2018, Defendant Siegel beneficially owned 276,000 shares of the Company's common stock.  Given that the price per share of the Company's common stock at the close of trading on April 10, 2018 was $4.54, Siegel owned over $1.2 million worth of Zion common stock.

33.     For the fiscal year ended December 31, 2017, Defendant Siegel received $64,765 in compensation from the Company. This included $30,000 in fees earned or paid in cash, $29,427 in option awards, and $5,338 in all other compensation.

34.     The Company's 2018 Proxy Statement stated the following about Defendant Siegel:

**Kent S. Siegel,** age 62**,** was appointed a director in December 2012 and assumed his office as of January 1, 2013. Mr. Siegel previously served as a director on the Company's Board from November 2003 through March 31, 2011 and as the Company's Chief Financial Officer from July 9, 2010 through March 31, 2011, the date of his resignation. Mr. Siegel has served as president and chief operating officer of Kent S. Siegel, P.C. since 1984. Kent S. Siegel, P.C. is a firm of certified

public accountants and attorneys at law based in West Bloomfield, Michigan, at which Mr. Siegel practices as a tax and bankruptcy attorney and CPA. Mr. Siegel holds a Bachelor of Business Administration from Michigan State University School of Business, a Juris Doctorate from Wayne State University School of Law and a Bachelor of Science in Electrical Engineering from Lawrence Technological University School of Engineering. Mr. Siegel's extensive experience as a certified public accountant and in tax law provides our Board with a critical accounting and tax law perspective. Mr. Siegel is a valuable member of the Audit Committee of our Board and serves on the Compensation Committee.

### Defendant Oroian

35.     Defendant Paul Oroian ("Oroian") has served as a Company director since November 2003 and serves as the Board's Lead Independent Director.  He also serves as Chairman of the Audit Committee and as a member of the Nominating and Corporate Governance Committee.  According to the 2018 Proxy Statement, as of April 10, 2018, Defendant Oroian beneficially owned 316,160 shares of the Company's common stock.  Given that the price per share of the Company's common stock at the close of trading on April 10, 2018 was $4.54, Oroian owned over $1.4 million worth of Zion common stock.

36.     For the fiscal year ended December 31, 2017, Defendant Oroian received $77,839 in compensation from the Company. This included $42,000 in fees earned or paid in cash, $29,427 in option awards, and $6,412 in all other compensation.

37.     The Company's 2018 Proxy Statement stated the following about Defendant Oroian:

**Paul Oroian**, age 65, was appointed a director in November 2003. He has served as president and managing partner of Oroian, Guest and Little, P.C., a certified public accounting and consulting firm based in San Antonio, Texas, since its founding in 1983. From 1980-1983, Mr. Oroian was a tax senior in the San Antonio offices of Arthur Young and Company. Mr. Oroian holds a Bachelor of Science degree in Business Administration from Bryant College. He has served as a board member of Technology Oversight Committee and the IRS Regional Liaison Committee of the Texas Society of Certified Public Accountants and was vice president and a director of the San Antonio CPA Society between 1992 and 1998. Mr. Oroian's extensive experience as a certified public accountant was instrumental

in his appointment to the Audit Committee of our Board and provides our Board with a critical accounting perspective. Mr. Oroian also serves as the Board's Lead Independent Director.

**Defendant Avery**

38.     Defendant William H. Avery ("Avery") has served as a Company director since September 2013, and has been retained as General Counsel on a part time basis under an independent consulting contract since December 2012.  According to the 2018 Proxy Statement, as of April 10, 2018, Defendant Avery beneficially owned 677,500 shares of the Company's common stock.  Given that the price per share of the Company's common stock at the close of trading on April 10, 2018 was $4.54, Avery owned over $3 million worth of Zion common stock.

39.     For the fiscal year ended December 31, 2017, Defendant Avery received $323,687 in compensation from the Company. This included $18,000 in fees earned or paid in cash, $136,091 in option awards, and $169,596 in all other compensation.

40.     The Company's 2018 Proxy Statement stated the following about Defendant Avery:

> **William H. Avery,** age 70, was appointed to the Board as a non-employee director, effective September 1, 2013. From 2001 to 2003, Mr. Avery worked on a broad variety of administrative, financial and legal matters for the Company. He served as Vice President of Finance and Treasurer commencing 2003 until 2007. He worked full time as Executive Vice President and Treasurer and as a director commencing in 2007 with responsibility for administration, finance and legal until 2010. From December 2012 to current, he has been retained as General Counsel on a part time basis under an independent consulting contract. Mr. Avery has a BBA in Finance and Economics from Southern Methodist University and a Juris Doctorate from Duke University.

**Defendant Russell**

41.     Defendant Lee Russell ("Russell") has served as a Company director since May 2017, and has served as an independent Geoscience Consultant with the Company since August 2012.  According to the 2018 Proxy Statement, as of April 10, 2018, Defendant Russell

beneficially owned 295,000 shares of the Company's common stock.  Given that the price per share of the Company's common stock at the close of trading on April 10, 2018 was $4.54, Russell owned over $1.3 million worth of Zion common stock.

42.     For the fiscal year ended December 31, 2017, Defendant Russell received $253,638 in compensation from the Company. This included $12,000 in fees earned or paid in cash, $141,427 in option awards, and $100,211 in all other compensation.

43.     The Company's 2018 Proxy Statement stated the following about Defendant Russell:

> **Dr. Lee R. Russell**, age 69, was appointed to the Board on May 1, 2017 and has been an independent Geoscience Consultant with the Company since August of 2012. He has over 41 years of industry experience in research and exploration positions with Shell Oil Co., Arco, and Sun Oil, as well as in his own exploration pursuits and consultancy. Projects have ranged from domestic exploration in the Gulf of Mexico, Rocky Mountains, and Alaska, to international projects in East and West Africa, North Sea, Norway, Onshore China, New Zealand, Papua New Guinea, and Newfoundland. He is a published author of many scientific articles and served as a Panel Chair and Co-Author of a National Research Council study on "Solid Earth Sciences and Society." He received his BA in Geology from Ohio Wesleyan University in 1970, and MSc and PhD degrees in Geology and Geophysics from Texas Tech University in 1972 and 1977. He is a member of the American Association of Petroleum Geologists, serving two terms as Associate Editor, and is a Fellow of the Geological Society of America.

**Defendant Furnace**

44.     Defendant Justin W. Furnace ("Furnace") has served as a Company director since April 2012, and serves as the Chairman of the Nominating and Corporate Governance Committee and as a member of the Compensation Committee.  According to the 2018 Proxy Statement, as of April 10, 2018, Defendant Furnace beneficially owned 240,000 shares of the Company's common stock.  Given that the price per share of the Company's common stock at the close of trading on April 10, 2018 was $4.54, Furnace owned almost $1.1 million worth of Zion common stock.

45.     For the fiscal year ended December 31, 2017, Defendant Furnace received $72,693 in compensation from the Company. This included $39,000 in fees earned or paid in cash, $29,427 in option awards, and $4,265 in all other compensation.

46.     The Company's 2018 Proxy Statement stated the following about Defendant Furnace:

> **Justin W. Furnace**, age 40, was appointed a director in April 2012. Mr. Furnace is the Director of External Affairs for Hilcorp Energy Company in Houston, Texas. Previously, from May of 2010 to September 2012, he was the President of the Texas Independent Producers & Royalty Owners Association (TIPRO), a trade association representing the interests of more than 2,300 independent oil and natural gas producers and royalty owners throughout Texas. As TIPRO President, Mr. Furnace was responsible for overseeing the association's governmental affairs in Texas and Washington D.C. and representing the interests of the association membership before various regulatory bodies, among other things. Prior to that, from June 2007 to May 2010, Mr. Furnace served as chief of staff and legal counsel to then Chairman Victor Carrillo of the Texas Railroad Commission. He was the Chairman's top policy advisor, in charge of evaluating, assessing and implementing all legal, technical and legislative strategies. Prior to his tenure at the Railroad Commission, from September 2004 to December 2006, he practiced law at the Beaumont office of Mehaffy Webber as an associate in the firm's business and litigation departments. While at the firm, he focused on both transactions and litigation relating to oil and gas, real estate and corporate matters. A graduate of Hardin-Simmons University in 2001, Mr. Furnace currently serves on its Board of Development. He later received his Doctor of Jurisprudence degree from Texas Tech University School of Law in 2004. Mr. Furnace's background in commercial oil and gas law and his regulatory experience make him a valuable objective resource for our company on these matters.

**Defendant Scammahorn**

47.     Defendant Gene Scammahorn ("Scammahorn") has served as a Company director since October 2012, and serves as a member of the Nominating and Corporate Governance Committee and as a member of the Audit Committee.  According to the 2018 Proxy Statement, as of April 10, 2018, Defendant Scammahorn beneficially owned 241,432 shares of the Company's common stock.  Given that the price per share of the Company's common stock at the close of

trading on April 10, 2018 was $4.54, Scammahorn owned almost $1.1 million worth of Zion common stock.

48.     For the fiscal year ended December 31, 2017, Defendant Scammahorn received $63,566 in compensation from the Company. This included $30,000 in fees earned or paid in cash, $29,427 in option awards, and $4,138 in all other compensation.

49.     The Company's 2018 Proxy Statement stated the following about Defendant Scammahorn:

> **Gene Scammahorn,** age **71,** was appointed a director in October 2012. Until recently, Mr. Scammahorn was an Internal Audit Director at Xerox Business Services, LLC, a position that he held since 2001. In this position, he was primarily responsible for consulting and advising operating management in preparations for over 100 external SSAE (formerly SAS 70) audits of domestic and global business process outsourcing contracts. Mr. Scammahorn has over 30 years of business experience, including two "Big Four" public accounting firms, major oil and gas companies and banking and consulting. He has participated in audit committee presentations and meetings for major clients, the Federal Reserve Bank of Dallas and Xerox Business Services, LLC. He received a BS in Accounting in 1973 from the University of Tulsa and is a Certified Public Accountant and a Certified Financial Planner. Mr. Scammahorn's extensive experience as a certified public accountant was instrumental in his appointment to the Audit Committee of our Board and provides our Board with a critical accounting perspective.

**Defendant DeVore**

50.     Defendant Ralph F. DeVore ("DeVore") served as a Company director from April 2018 to June 2018.

51.     For the fiscal year ended December 31, 2017, Defendant DeVore received $52,427 in compensation from the Company. This included $18,000 in fees earned or paid in cash, $29,427 in option awards, and $5,000 in all other compensation.

52.     The Company's April 16, 2018 current report on Form 8-K filed with the SEC stated the following about Defendant DeVore:

Zion Oil & Gas, Inc. ("Zion" or "Company") has appointed Ralph F. DeVore to its Board of Directors ("Board") as an independent director, effective April 16, 2018. Mr. DeVore is being appointed to the Nominating and Corporate Governance Committee. Mr. DeVore is returning to Zion's Board as a Class III Director to fill out the term of Yehezkel "Charlie" Druckman, who recently passed away.

Mr. DeVore's career includes over 25 years in advertising and marketing as an entrepreneur doing business with Fortune 100 companies such as PepsiCo, Walgreens and Philip Morris. In addition, he held a management position with The Sherwin-Williams Company, a Fortune 500 company. Ralph currently serves as President of Christian Commerce Corporation, a 501(c)(3) private foundation which he founded in 1984. The foundation's focus is promotion and education of Christian principles through worldwide evangelism. He is on the Christian Commerce Corporation board and on the Hal Lindsey Website Ministries board. He also serves in a consulting role to other Christian ministries who call on his business expertise and years of ministry experience. Mr. DeVore earned a B.S. in Occupational Education from Wayland Baptist University and is also a graduate of Southwestern Baptist Theological Seminary.

### Defendant van Brauman

53.     Defendant Martin M. van Brauman ("van Brauman") has served as a Company director since April 2014, and has served as Corporate Secretary and Treasurer since January 2012 and as Senior Vice President since June 2013.  According to the 2018 Proxy Statement, as of April 10, 2018, Defendant van Brauman beneficially owned 432,521 shares of the Company's common stock.  Given that the price per share of the Company's common stock at the close of trading on April 10, 2018 was $4.54, van Brauman owned over $1.9 million worth of Zion common stock.

54.     For the fiscal year ended December 31, 2017, Defendant van Brauman received $391,375 in compensation from the Company.  This included $18,000 in fees earned or paid in cash, $163,309 in option awards, and $210,066 in all other compensation.

55.     The Company's 2018 Proxy Statement stated the following about Defendant van Brauman:

**Martin M. van Brauman**, age 70, was appointed to the Board effective April 1, 2014 and since January 1, 2012 has been the Corporate Secretary and Treasurer and since June 1, 2013 has been a Senior Vice President. From July 1, 2007 to January

31, 2009, he served as the Chief Financial Officer, Corporate Secretary, Senior Vice President and Board director. Between February 1, 2009 and July 1, 2009, he served as the Chief Legal Officer. He is Board Certified in Tax Law by the Texas Board of Legal Specialization and has been in private legal practice in Dallas specializing in international and corporate tax and business corporate law. Previously, he spent 12 years as a Senior Attorney (International Specialist and Petroleum Industry Specialist) with the Office of Chief Counsel, IRS, followed by three years as a tax consultant with Deloitte & Touche and Grant Thornton. He has published on subjects related to taxation of international oil and gas ventures. Mr. van Brauman holds a B.E. degree from Vanderbilt University, a Doctor of Jurisprudence degree from St. Mary's University and an M.B.A. (Beta Gamma Sigma) and LL.M. (Tax Law) from Southern Methodist University. He has been an Adjunct Professor at Southern Methodist University, School of Law, L.L.M. Tax Program and at the University of Texas at Dallas, Masters of Accounting Program. He is on the Advisory Board of the Jewish and Israel Studies Program, University of North Texas. He is a Capitol Club member of the American Israel Public Affairs Committee ("AIPAC").

**Defendant the Estate of Yehezkel Druckman**

56.    Yehezkel Druckman ("Druckman") served as a Company director from November 2005 until his death in or around, upon information and belief, April 2018.

57.    The Company's 2018 Proxy Statement stated the following about Druckman:

**Dr. Yehezkel "Charlie" Druckman**, age 79, was appointed a director in November 2005. Dr. Druckman was Petroleum Commissioner for the State of Israel from 1995 until his retirement in 2004, where he supervised the licensing of petroleum rights both onshore and offshore Israel. These efforts led to the discovery of 1.5 trillion cubic feet of gas in the Israeli offshore Mari B and other smaller fields during 1999-2000. Since 1965, he has been a member of the professional staff of the Geological Survey of Israel, where he headed the Mapping, Stratigraphy and Oil Division during 1982-1985 and 1991-1994. He was also affiliated with Louisiana State University at Baton Rouge as Research Associate in Geology during 1978-1980 and 1989-1990. He was awarded in 1974 the Israel Geological Society's Perez Grader award. He is an active member of the American Association of Petroleum Geologists and the Geological Society of Israel (where he served as president in 1982 and for a number of years on the Society's editorial board). He also served as member of the Israeli National Petroleum Commission and Board of Directors of Oil Exploration (Investments) Ltd., an Israeli government company. Dr. Druckman graduated from the Hebrew University in Jerusalem where he was awarded BSc, MSc and PhD degrees in geology. Dr. Druckman's academic credentials as a geologist, his experience as the Petroleum Commissioner for the State of Israel for nearly a decade and his vast knowledge and expertise in the geological mapping of the State of Israel for petroleum exploration purposes

provide us with a critical resource in our ongoing oil and gas exploration efforts in Israel as well as a liaison to the Israeli regulatory authorities with whom we are in ongoing contact with respect to the maintenance of our license and other oil and gas exploration rights. *Note: On April 9, 2018, memorial services were held in Jerusalem, Israel for Dr. Yehezkel "Charlie" Druckman.*

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

58.     By reason of their positions as officers, directors, and fiduciaries of Zion and because of their ability to control the business and corporate affairs of Zion, the Individual Defendants owed Zion and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Zion in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Zion and its shareholders so as to benefit all shareholders equally.

59.     Each director and officer of the Company owes to Zion and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

60.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Zion, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.

61.     To discharge their duties, the officers and directors of Zion were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

62.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The

conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Zion, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised Zion's Board at all relevant times.

63.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information.

64.     To discharge their duties, the officers and directors of Zion were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Zion were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, Texas, and the United States, and pursuant to Zion's own Code of Business Conduct and Ethics for Directors, Officers and

Employees;

        (b)      conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

        (c)      remain informed as to how Zion conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

        (d)      establish and maintain systematic and accurate records and reports of the business and internal affairs of Zion and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

        (e)      maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Zion's operations would comply with all applicable laws and Zion's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

        (f)      exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

        (g)      refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

        (h)      examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate

disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

65.     Each of the Individual Defendants further owed to Zion and the shareholders the duty of loyalty requiring that each favor Zion's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

66.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Zion and were at all times acting within the course and scope of such agency.

67.     Because of their advisory, executive, managerial, and directorial positions with Zion, each of the Individual Defendants had access to adverse, non-public information about the Company.

68.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Zion.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

69.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and assisted each other in breaching their respective duties.

70.     The purpose and effect of the conspiracy, common enterprise, and common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, and violations of the Exchange Act; (ii) conceal adverse information concerning the Company's operations, financial

condition, legal compliance, future business prospects and internal controls; and (iii) to artificially inflate the Company's stock price.

71.     The Individual Defendants accomplished their conspiracy, common enterprise, and common course of conduct by causing the Company purposefully or recklessly to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants who is a director of Zion was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and common course of conduct complained of herein.

72.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted in the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

73.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Zion, and was at all times acting within the course and scope of such agency.

## ZION'S CODE OF BUSINESS CONDUCT AND ETHICS

74.     Zion's Code of Business Conduct and Ethics for Directors, Officers and Employees (the "Code of Conduct") provides that the Company has adopted the Code of Conduct "to set forth

the Company's standards and practices relating to the business ethics of its directors, officers and employees."

75.    The Code of Conduct provides, as to "Accuracy of Records and Public Disclosures," that:

> The Company requires honest and accurate recording and reporting of information in order to make responsible business decisions and to meet its obligations to make full, fair, timely, accurate and understandable disclosure in the reports that it files with the U.S. Securities and Exchange Commission (the "SEC") and in other public communications.
>
> This means, without limitation, that:
>
> • All financial books, records and accounts clearly and accurately reflect transactions and events;
> • No false or artificial entries are made in the Company's books and records (e.g., only the true and actual number of hours worked should be reported, and the use of business expense accounts must be documented and recorded accurately);
> • No undisclosed or unrecorded funds or assets of the Company are established for any purpose unless permitted by applicable law or regulation;
> • No payment on behalf of the Company is approved without adequate supporting documentation and when a payment is made it is used only for the purpose specified in the supporting documentation;
> • There is full compliance with the Company's accounting rules and procedures and internal controls;
> • No payroll related expenditures, bonuses, awards or non-cash gifts are given to or by directors, officers or employees without the proper approval and adequate documentation;
> • No payments are made in cash or checks drawn to cash, except petty cash;
> • No invoices are made higher or lower than normal prices at a customer's request;
> • All Company funds, assets and liabilities are recorded in accordance with appropriate Company accounting procedures;
> • Records are retained and destroyed according to the Company's record retention policies; and
> • No individual shall take any direct or indirect action fraudulently to influence, coerce, manipulate or mislead any internal accountant or auditor or the Company's independent public accountants in the performance of an internal or independent audit of the Company's financial statements or accounting books and records.

It is the Company's policy that the reports it files with the SEC and all other public communications will be full, fair, accurate, timely and understandable. The Company expects all personnel to take this responsibility very seriously, to provide prompt and accurate answers to inquiries related to the Company's public disclosure requirements, and to bring to the attention of their supervisors (a) any material information of which they become aware that affects the disclosures made by the Company and (b) any information they may have concerning significant deficiencies in the design or operation of the Company's internal controls which could adversely affect the Company's ability to record, process, summarize and report financial data.

Depending upon their positions with the Company, certain individuals may be called upon to assure that the Company's filings are complete, fair and understandable. To this end, such individuals shall:

> • Comply, and, to the extent applicable, cause those under their supervision to comply, fully at all times with the Company's disclosure controls and procedures; and
> • Ensure that all reports and disclosures they prepare or review, in whole or in part, are true and correct in all material respects and do not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

76.     The Code of Conduct provides, as to "Compliance with Law," that:

Obeying the law, both in letter and in spirit, is paramount to the conduct of the Company's business. Directors, officers and employees must comply, and, to the extent applicable, ensure that employees under their supervision comply, with the laws, rules and regulations of each city, state and country in which the Company does business.

While the Company does not expect that all personnel will know the details of all of these laws, it requires that they have a general understanding of the laws applicable to their specific job responsibilities so as to enable them to determine when to seek advice from supervisors, managers or other appropriate individuals. To ensure that the Company's operations are conducted in compliance with all applicable governmental regulations, directors, officers and employees must avoid activities that could involve or lead to involvement of the Company or its personnel in any unlawful practice.

For example, among other things, they must not, and, to the extent applicable, must not permit the employees under their supervision to:

> • Take any unlawful or improper actions on the Company's behalf (e.g., engage in conduct that is intended to mislead, manipulate or take unfair

advantage of a collaborator or agree with representatives of competing companies to engage in price fixing or other illegal activities);
• Use the assets of the Company for any unlawful or improper purpose; or
• Directly or indirectly promise, offer or make payment in money or anything of value to anyone, including a government official, agent or employee of a government, political party, labor organization or business entity or a candidate of a political party, with the intent to induce favorable business treatment or to improperly affect business or government decisions.

77.     The Code of Conduct provides, as to "Violations of the Code," that:

Compliance with the Code is a condition of employment. No one has the authority to make another person violate the Code, and any attempt to direct or otherwise influence someone else to commit a violation is unacceptable. Failure to comply with the Code may result in a range of disciplinary actions, including dismissal. Any illegal activity will be dealt with swiftly and the violators will be reported to the appropriate authorities. Directors, officers and employees are required to report promptly any violations of the Code by others to the Code Administrator, regardless of whether such persons are their superiors, peers or subordinates. The Code Administrator, working with such advisers, including counsel to the Company, as he or she deems necessary or appropriate, will direct the investigation of any suspected violations. Failure to report, or to disclose relevant information concerning, a violation of the Code or the laws and regulations applicable to the Company and its business to the Code Administrator may be grounds for disciplinary action. Similarly, if an individual deliberately provides false information concerning a violation of the Code or the laws and regulations applicable to the Company and its business, he or she may be subject to disciplinary action. No individual should discuss instances of actual or suspected violations of the Code or criminal activity with anyone other than the Code Administrator and those persons authorized by the Code Administrator to investigate such conduct. Directors, officers and employees must not promise to refrain from reporting conduct to the Code Administrator or law enforcement authorities and must not attempt to dissuade others from reporting actual or suspected Code violations or criminal activity. An individual who is contacted by any law enforcement or other governmental agency about actual or suspected illegal activity of any kind must immediately report such contact to the Code Administrator. Directors, officers and employees are expected to cooperate in any investigation of an alleged Code violation or criminal conduct.

78.     In violation of the Code of Conduct, the Individual Defendants conducted little, if any, oversight of the Company's internal controls over public reporting and of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and facilitate and disguise the Individual Defendants' violations of law,

including breaches of fiduciary duty, unjust enrichment, and violations of the Exchange Act. In violation of the Code of Conduct, the Individual Defendants failed to maintain the accuracy of Company records and reports, comply with laws and regulations, and properly report violations of the Code of Conduct.

## INDIVIDUAL DEFENDANTS' MISCONDUCT

### Background

79.     Zion is an oil and gas exploration company with a history of over 18 years of oil and gas exploration in Israel, and currently holds one active petroleum exploration license onshore Israel.

80.     As of June 30, 2018, the Company has no revenues from its oil and gas operations.

### Materially False and Misleading Statements Issued During the Relevant Period

### *March 12, 2018 Form 10-K*

81.     On March 12, 2018, the Company filed its annual report for the fiscal quarter and year ended December 31, 2017 on Form 10-K (the "2017 10-K") with the SEC, signed by Defendants Carrillo, Croswell, Guinn, Brown, Avery, van Brauman, Oroian, Druckman, Garb, Siegel, Scammahorn, Furnace, and Russell.

82.     The 2017 10-K states that "Zion's vision, as guided by John Brown, of finding oil and/or natural gas in Israel, is biblically inspired. The vision is based, in part, on biblical references alluding to the presence of oil and/or natural gas in territories within the State of Israel that were formerly within certain ancient biblical tribal areas."

83.     The 2017 10-K additionally commented on claims, actions, or proceedings against the Company, stating, in relevant part:

> From time to time, the Company may be subject to routine litigation, claims, or disputes in the ordinary course of business. The Company defends itself vigorously in all such matters. In the opinion of management, no pending or known threatened

claims, actions or proceedings against the Company are expected to have a material adverse effect on its financial position, results of operations or cash flows. However, the Company cannot predict with certainty the outcome or effect of any such litigation or investigatory matters or any other pending litigation or claims. There can be no assurance as to the ultimate outcome of any such lawsuits and investigations.

84.     Attached to the 2017 10-K were certifications pursuant to Rule 13a-14(a) and 15d-14(a) under the Exchange Act and the Sarbanes-Oxley Act of 2002 ("SOX Certifications") signed by Defendants Carrillo and Croswell, attesting to the accuracy of the 2017 10-K.

### The Truth Begins to Emerge While False and Misleading Statements Continue

#### *The March 26, 2018 Twitter Post*

85.     On March 26, 2018, a Twitter user named "FuzzyPandaShort" posted on Twitter an excerpt from a purported letter from the SEC replying to a FOIA request for "all documents in possession of [the] SEC that pertain to investigations regarding Zion Oil & Gas (ZN) for the time period January 1, 2017 through March 1, 2018."

86.     The letter also noted that the SEC was "withholding records that may be responsive to your request under 5 U.S.C. § 552(b)(7)(A), 17 CFR § 200.80(b)(7)(i). This exemption protects from disclosure records compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement activities."

87.     The letter further stated that "[i]t is the general policy of the [SEC] to conduct its investigations on a non-public basis."

88.     The Twitter post itself noted that "Zion has an Undisclosed SEC Investigation. Records are being withheld that could be used for law enforcement purposes."

89.     The post included the following image of the letter:



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
STATION PLACE
100 F STREET, NE
WASHINGTON, DC 20549-2465

Office of FOIA Services

March 20, 2018

Zion Oil & Gas Has an
Undisclosed SEC investigation

Re:  Freedom of Information Act (FOIA), 5 U.S.C. § 552
     Request No. 18-01306-FOIA

Dear Mr.

     This letter responds to your request, dated and received in
this office on March 8, 2018, for access to all documents in
possession of SEC that pertain to investigations regarding Zion
Oil & Gas (ZN) for the time period January 1, 2017 through March
8, 2018. You mentioned you are specifically looking for records
in possession of the SEC Enforcement Division and/or the ENF's
Microcap Fraud Working Group.

     We are withholding records that may be responsive to your
request under 5 U.S.C. § 552(b)(7)(A), 17 CFR § 200.80(b)(7)(i).
This exemption protects from disclosure records compiled for law
enforcement purposes, the release of which could reasonably be
expected to interfere with enforcement activities. Since
Exemption 7(A) protects the records from disclosure, we have not
determined if other exemptions apply. Therefore, we reserve the
right to assert other exemptions when Exemption 7(A) no longer
applies.

     It is the general policy of the Commission to conduct its
investigations on a non-public basis. Thus, subject to the
provisions of FOIA, the Commission does not disclose the
existence or non-existence of an investigation or information
gathered unless made a matter of public record in proceedings
brought before the Commission or in the courts. Accordingly, the
assertion of this exemption should not be construed as an
indication by the Commission or its staff that any violations of
law have occurred with respect to any person, entity, or
security.

***Zion's March 27, 2018 Response***

90.     On March 27, 2018, Zion posted a response on Twitter, stating, "There is no SEC investigation.  Merely indicators of a routine FINRA questionnaire that's standard after a steep rise of our stock recently."

***April 13, 2018 Proxy Statement***

91.     On April 13, 2018, the Company filed the 2018 Proxy Statement with the SEC. The 2018 Proxy Statement failed to disclose that: (1) the Company was, or was soon going to be, the subject of an SEC investigation; and (2) the Company failed to maintain internal controls.

92.     Moreover, the 2018 Proxy Statement was false and misleading when it stated that the Code of Conduct applies to the Company's directors, officers and all employees, due to the Individual Defendants' failures to abide by it.

### *April 13, 2018 Probes Reporter Report*

93.     On April 13, 2018, *Probes Reporter* published a report concerning SEC investigative activity concerning Zion, and *Probes Reporter*'s own FOIA request concerning Zion. The report stated, in relevant part:

> In a letter dated 06-Apr-2018, the SEC gave us a response to suggest the absence of recent SEC investigative activity at Zion Oil & Gas, Inc. This new information is contrary to a posting made to Twitter on 26-Mar-2018, by someone unknown to us [FuzzyPandaShort]. We now have conflicting FOIA responses, on the same company, received only weeks apart.

> * * *

> To us we simply have two conflict data points that require further work. Until that work is complete, there remains a cloud of uncertainty regarding the data. We have already filed an administrative appeal, the results of which should give us better answers. We will follow up when we learn more.

### *May 8, 2018 Form 10-Q*

94.     On May 8, 2018, the Company filed its quarterly report for the fiscal quarter ended March 31, 2018 on Form 10-Q with the SEC (the "1Q 2018 10-Q"), signed by Defendants Carrillo and Croswell.   The 1Q 2018 10-Q commented on claims, actions, or proceedings against the Company, stating, in relevant part:

> From time to time, the Company may be subject to routine litigation, claims, or disputes in the ordinary course of business. The Company defends itself vigorously in all such matters. In the opinion of management, no pending or known threatened

claims, actions or proceedings against the Company are expected to have a material adverse effect on its financial position, results of operations or cash flows. However, the Company cannot predict with certainty the outcome or effect of any such litigation or investigatory matters or any other pending litigation or claims. There can be no assurance as to the ultimate outcome of any such lawsuits and investigations.

95.      Attached to the 1Q 2018 10-Q were SOX Certifications signed by Defendants

Carrillo and Croswell, attesting to the accuracy of the 1Q 2018 10-Q.

### May 30, 2018 Probes Reporter Report

96.      On May 30, 2018, *Probes Reporter* published an additional report on the Company,

titled, "New Data Confirms SEC Investigation at Zion Oil & Gas."  The report commented on

*Probes Reporter*'s continued communications with the SEC concerning Zion, and stated, in

relevant part:

> In a letter dated 06-Apr-2018, the SEC gave us a response to suggest the absence of recent SEC investigative activity at Zion Oil & Gas, Inc. With conflicting FOIA responses on the same company, received only weeks apart, and the company having issued a public denial, we decided it was prudent to publish the data provided to us. We did so, on 13-Apr2018. Now, in an appeal response dated 15-May-2018, on-going SEC enforcement proceedings were confirmed at Zion Oil & Gas, Inc. This has not been disclosed.
>
> **Our Take**: An appeal response is the gold standard when it comes to SEC FOIA responses. In this case the appeal confirmed on-going enforcement proceedings. The problem for Zion Oil & Gas is they flatly denied it back in March. We're going with the SEC on this one.

### May 30, 2018 Zion Twitter Posts

97.      On May 30, 2018, Zion made a post on Twitter denying the existence of an

investigation into the Company.  The post stated, "There is no SEC investigation into Zion Oil &

Gas, Inc.," and that the public should "[j]ust ignore such distortions."

98.    Later that same day, the Company made an additional post on Twitter, stating, "Arm yourself with good information and how to spot false rumors."  The post also provided a link to an *Investopedia* article titled, "Short and Distort: Bear Market Stock Manipulation."

### June 11, 2018 Financial Times Article

99.    On June 11, 2018, the *Financial Times* published an article titled, "Zion Oil: Living on a prayer," which included comments made by Defendant Carrillo and *Probes Reporter* to the *Financial Times* concerning an SEC investigation of Zion.  The article stated, in relevant part:

> We asked Zion Oil about the appeal response letter which appears to indicate ongoing enforcement proceedings. Chief executive officer Victor Car[r]illo told us:
>
> "We are unaware of any SEC investigation of Zion Oil & Gas and we believe that false and malicious rumors are being spread by short-sellers interested in making a buck by seeing the stock price drop precipitously."
>
> We put that allegation to Probes Reporter, which said:
>
> "The response we have from the SEC is clear and in black & white on government letterhead. We stand fully by our report. As a long-standing practice, Probes Reporter never trades in the companies we write on."

### The Truth Fully Emerges

100.    On July 11, 2018, the Company filed a current report on Form 8-K with the SEC announcing it had received a subpoena from the SEC to produce documents and that the SEC was engaging in a "non-public, fact-finding inquiry into the Company."  The Form 8-K stated, in relevant part:

> On Thursday, June 21, 2018, Zion Oil & Gas, Inc. ("Zion" or "Company") received a subpoena to produce documents from the Fort Worth office of the Securities and Exchange Commission ("SEC"), informing Zion of the existence of a non-public, fact-finding inquiry into the Company. Zion, an SEC-reporting company with audited financial statements in the US and Israel for over a decade, will fully cooperate with this investigation. Until receipt of the subpoena on June 21, 2018, Zion had no previous communication with the SEC on this issue and was unaware of this investigation. The SEC stated that "the investigation and the subpoena do not mean that we have concluded that [Zion] or anyone else has violated the law."

While we acknowledge that our response to the subpoena will necessarily entail significant costs and management's attention, it should have no effect on Zion's ongoing testing procedures on its Megiddo-Jezreel #1 well. The Company does not intend to comment further on this matter unless in the Company's judgment, it merits further comment or public disclosure.

101.     On this news, the price per share of Zion common stock fell $0.44, or 11%, from the previous day's closing price, closing at $3.56 on July 12, 2018.

102.     The statements referenced in ¶¶ 81-84, 90, 94-95, and 97-99 above were materially false and misleading and failed to disclose material facts necessary to make the statements made not false and misleading. Specifically, the Individual Defendants failed to disclose that: (1) the Company was, or was soon going to be, the subject of an SEC investigation; and (2) the Company failed to maintain internal controls. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

## DAMAGES TO ZION

103.     As a direct and proximate result of the Individual Defendants' conduct, Zion is losing and expending many millions of dollars.

104.     Such expenditures include, but are not limited to, legal fees associated with the Securities Class Action filed against the Company, its CEO, and its CFO, any internal investigations, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

105.     Additionally, these expenditures include, but are not limited to, lavish compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

106.     As a direct and proximate result of the Individual Defendants' conduct, Zion has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount"

that will plague the Company's stock in the future due to the Company's and their misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE ALLEGATIONS

107.    Plaintiff brings this action derivatively and for the benefit of Zion to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Zion, unjust enrichment, violations of Section 14(a) of the Exchange Act, as well as the aiding and abetting thereof.

108.    Zion is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

109.    Plaintiff is, and has been at all relevant times, a shareholder of Zion. Plaintiff will adequately and fairly represent the interests of Zion in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

110.    Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

111.    A pre-suit demand on the Board of Zion is futile and, therefore, excused. At the time of filing of this action, the Board consists of the following 13 individuals: Defendants Croswell, Brown, Guinn, Garb, Siegel, Oroian, Avery, Russell, Furnace, Scammahorn, and van Brauman (the "Director-Defendants") and non-parties Virginia Prodan and John T. Seery (collectively, with the Director-Defendants, the "Directors"). Plaintiff needs only to allege demand

futility as to seven of the 13 directors that were on the Board at the time this action was commenced.

112.    Demand is excused as to all of the Director-Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material facts, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

113.    In complete abdication of their fiduciary duties, the Director-Defendants either knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. The fraudulent scheme was, *inter alia*, intended to make the Company appear more profitable and attractive to investors. As a result of the foregoing, the Director-Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

114.    Additional reasons that demand on Defendant Croswell is futile follow. Defendant Croswell has served as the Company's CFO since August 2016.  Thus, as the Company admits in the 2018 Proxy Statement, Defendant Croswell is a non-independent director. He receives handsome compensation, including $364,749 in 2017. His large Company stock holding, worth almost $1.9 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. As a trusted Company director and executive, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets.

Defendant Croswell signed, and thus personally made the false and misleading statements in, the 2017 10-K referenced herein. Moreover, Defendant Croswell is a defendant in the Securities Class Action. Thus, for these reasons, too, Defendant Croswell breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

115.   Additional reasons that demand on Defendant Brown is futile follow. Defendant Brown is the founder of the Company and has served as a Company director and the Chairman of the Board since April 2000. Thus, as the Company admits in the 2018 Proxy Statement, Defendant Brown is a non-independent director. He receives handsome compensation, including $632,419 in 2017. His large Company stock holding, worth over $5 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. As a long-time Company director and executive, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Brown signed, and thus personally made the false and misleading statements in, the 2017 10-K referenced herein.  Thus, for these reasons, too, Defendant Brown breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

116.   Additional reasons that demand on Defendant Avery is futile follow. Defendant Avery has served as a Company director since September 2013, and has been retained as General Counsel on a part time basis under an independent consulting contract since December 2012. Thus, as the Company admits in the 2018 Proxy Statement, Defendant Avery is a non-independent

director. He receives handsome compensation, including $323,687 in 2017. His large Company stock holding, worth over $3 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. As a long-time Company director and part time Company employee, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Avery signed, and thus personally made the false and misleading statements in, the 2017 10-K referenced herein. Thus, for these reasons, too, Defendant Avery breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

117. Additional reasons that demand on Defendant van Brauman is futile follow. Defendant van Brauman has served as a Company director since April 2014, and has served as the Corporate Secretary and Treasurer since January 2012 and as Senior Vice President since June 2013. Thus, as the Company admits in the 2018 Proxy Statement, Defendant van Brauman is a non-independent director. He receives handsome compensation, including $391,375 in 2017. His large Company stock holding, worth over $1.9 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. As a long-time Company director and Company employee, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant van Brauman signed, and thus personally made the false and misleading statements in, the 2017 10-K referenced herein. Thus, for these reasons, too, Defendant van Brauman breached his fiduciary duties, faces a substantial

likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

118.    Additional reasons that demand on Defendant Guinn is futile follow. Defendant Guinn has served as the Company's Executive Vice Chairman since July 2016 and as the Company's President and Chief Operating Officer since September 2016.  He has also served as a Company director since May 2015.  Thus, as the Company admits in the 2018 Proxy Statement, Defendant Guinn is a non-independent director. He receives handsome compensation, including $465,647 in 2017. His large Company stock holding, worth over $1.5 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. As a trusted Company director and Company employee, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Guinn signed, and thus personally made the false and misleading statements in, the 2017 10-K referenced herein.  Thus, for these reasons, too, Defendant Guinn breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

119.    Additional reasons that demand on Defendant Russell is futile follow. Defendant Russell has served as a Company director since May 2017, and has served as an independent Geoscience Consultant with the Company since August 2012.   He receives handsome compensation, including $253,638 in 2017.  His large Company stock holding, worth over $1.3 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. As a long-time Company director, he conducted little, if any, oversight

of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Russell signed, and thus personally made the false and misleading statements in, the 2017 10-K referenced herein. Thus, for these reasons, too, Defendant Russell breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

120.    Additional reasons that demand on Defendant Garb is futile follow. Defendant Garb has served as a Company director since November 2005, and serves as Chairman of the Compensation Committee. His large Company stock holding, worth over $1.3 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. As a long-time Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Garb signed, and thus personally made the false and misleading statements in, the 2017 10-K referenced herein. Thus, for these reasons, too, Defendant Garb breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

121.    Additional reasons that demand on Defendant Siegel is futile follow. Defendant Siegel has served as a Company director since January 2013, and serves as a member of the Audit Committee and the Compensation Committee. His large Company stock holding, worth over $1.2 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock

price as high as possible. As a long-time Company director and member of the Audit Committee, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Siegel signed, and thus personally made the false and misleading statements in, the 2017 10-K referenced herein.  Thus, for these reasons, too, Defendant Siegel breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

122.    Additional reasons that demand on Defendant Oroian is futile follow. Defendant Oroian has served as a Company director since November 2003 and serves as the Board's Lead Independent Director.  He also serves as Chairman of the Audit Committee and as a member of the Nominating and Corporate Governance Committee.  His large Company stock holding, worth over $1.4 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. As a long-time Company director and Chairman of the Audit Committee, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Oroian signed, and thus personally made the false and misleading statements in, the 2017 10-K referenced herein.  Thus, for these reasons, too, Defendant Oroian breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

123.    Additional reasons that demand on Defendant Furnace is futile follow. Defendant Furnace has served as a Company director since April 2012, and serves as the Chairman of the

Nominating and Corporate Governance Committee and as a member of the Compensation Committee.  His large Company stock holding, worth almost $1.1 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. As a long-time Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Furnace signed, and thus personally made the false and misleading statements in, the 2017 10-K referenced herein.  Thus, for these reasons, too, Defendant Furnace breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

124.    Additional reasons that demand on Defendant Scammahorn is futile follow. Defendant Scammahorn has served as a Company director since October 2012, and serves as a member of the Nominating and Corporate Governance Committee and as a member of the Audit Committee.  His large Company stock holding, worth almost $1.1 million before the fraud was fully exposed, reveals his interest in keeping the Company's stock price as high as possible. As a long-time Company director and member of the Audit Committee, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Scammahorn signed, and thus personally made the false and misleading statements in, the 2017 10-K referenced herein.  Thus, for these reasons, too, Defendant Scammahorn breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

125.    Additional reasons that demand on the Board is futile follow.

126.    Demand in this case is excused because the Directors, 11 of whom are named as defendants in this action, and one of whom is a defendant in the Securities Class Action, control the Company and are beholden to each other. The Directors have longstanding business and personal relationships with each other and the other Individual Defendants that preclude them from acting independently and in the best interests of the Company and the shareholders. These conflicts of interest precluded the Director-Defendants from adequately monitoring the Company's operations and internal controls and calling into question the Individual Defendants' conduct. Thus, any demand on the Directors would be futile.

127.    In violation of the Code of Conduct, the Director-Defendants conducted little, if any, oversight of the Company's internal controls over public reporting and of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public, and facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, and violations of Section 14(a) of the Exchange Act. In violation of the Code of Conduct, the Director-Defendants failed to comply with the law. Thus, the Directors face a substantial likelihood of liability and demand is futile as to them.

128.    Zion has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Directors have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Zion any part of the damages Zion suffered and will continue to suffer thereby. Thus, any demand upon the Directors would be futile.

129.    The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Directors can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

130.    The acts complained of herein constitute violations of fiduciary duties owed by Zion's officers and directors, and these acts are incapable of ratification.

131.    The Directors may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Zion. If there is a directors' and officers' liability insurance policy covering the Directors, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Directors, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Directors were to sue themselves or certain of the officers of Zion, there would be no directors' and officers' insurance protection. Accordingly, the Directors cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Directors is futile and, therefore, excused.

132.     If there is no directors' and officers' liability insurance, then the Directors will not cause Zion to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

133.     Thus, for all of the reasons set forth above, all of the Directors, and, if not all of them, certainly at least seven of the Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## FIRST CLAIM

**Against Individual Defendants for Violations of
Section 14(a) of the Securities Exchange Act of 1934**

134.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

135.     The Section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. The Section 14(a) claims alleged herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these nonfraud claims.

136.     Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

137.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

138.    Under the direction and watch of the Directors, the 2018 Proxy Statement failed to disclose that: (1) the Company was, or was soon going to be, the subject of an SEC investigation; and (2) the Company failed to maintain internal controls.  As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

139.    Moreover, the 2018 Proxy Statement was false and misleading when it stated that the Code of Conduct applies to the Company's directors, officers and all employees, due to the Individual Defendants' failures to abide by it.

140.    In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2018 Proxy Statement were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the 2018 Proxy Statement, including election of directors and appointment of an independent auditor.

141.    The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the 2018 Proxy Statement.

## SECOND CLAIM

**Against the Individual Defendants for Breach of Fiduciary Duties**

142.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

143.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Zion's business and affairs.

144.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

145.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Zion.

146.    In breach of their fiduciary duties owed to Zion, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose that: (1) the Company was, or was soon going to be, the subject of an SEC investigation; and (2) the Company failed to maintain internal controls.  As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

147.    The Individual Defendants failed to correct and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

148.    In further breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

149.     The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements and representations. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Zion's securities.

150.     The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Zion's securities.

151.     These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

152.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Zion has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

153.     Plaintiff on behalf of Zion has no adequate remedy at law.

## **THIRD CLAIM**

### **Against Individual Defendants for Unjust Enrichment**

154.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

155.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Zion.

156.     The Individual Defendants received bonuses, stock options, or similar compensation from Zion that was tied to the performance or artificially inflated valuation of Zion, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

157.     Plaintiff, as a shareholder and a representative of Zion, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, excessive compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

158.     Plaintiff on behalf of Zion has no adequate remedy at law.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)     Declaring that Plaintiff may maintain this action on behalf of Zion, and that Plaintiff is an adequate representative of the Company;

(b)     Declaring that each of the Individual Defendants breached or aided and abetted the breach of their fiduciary duties to Zion;

(c)     Determining and awarding to Zion the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)      Directing Zion and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Zion and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1.  a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the board;

2.  a provision to permit the shareholders of Zion to nominate at least seven candidates for election to the board; and

3.  a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

(e) Awarding Zion restitution from each of the Individual Defendants;

(f) Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

Dated: September 10, 2018

Of Counsel:

**THE BROWN LAW FIRM, P.C.**
Timothy W. Brown
240 Townsend Square
Oyster Bay, NY 11771
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: tbrown@thebrownlawfirm.net

Respectfully submitted,

**FARNAN LLP**

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
Email: bfarnan@farnanlaw.com
Email: mfarnan@farnanlaw.com

*Attorneys for Plaintiff*