IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KEITH SMITH, et. al., derivatively on behalf of ZION OIL & GAS, INC.,

Plaintiffs;

v.

VICTOR G. CARRILLO, MICHAEL B. CROSWELL, JR., JOHN M. BROWN, DUSTIN L. GUINN, FORREST A. GARB, KENT S. SIEGEL, PAUL OROIAN, WILLIAM H. AVERY, THE ESTATE OF YEHEZKEL DRUCKMAN, LEE RUSSELL, JUSTIN W. FURNACE, GENE SCAMMAHORN, RALPH F. DEVORE, and MARTIN M. VAN BRAUMAN,

Defendants,

and

ZION OIL & GAS, INC.,

Nominal Defendant.

Civil Action No. 18-1399-RGA

MEMORANDUM OPINION

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, DE; Brian D. Long and Gina M. Serra, RIGRODSKY & LONG, P.A., Wilmington, DE; Marion C. Passmore and Melissa A. Fortunato, BRAGAR EAGEL & SQUIRE, P.C., New York, NY; Robert V. Prongay, Lesley F. Portnoy, and Pavithra Rajesh, GLANCY PRONGAY & MURRAY LLP, Los Angeles, CA; Timothy Brown, THE BROWN LAW FIRM, P.C., Oyster Bay, NY; Matthew M. Houston and Benjamin I. Sachs-Michaels, GLANCY PRONGAY & MURRAY LLP, New York, NY, attorneys for Plaintiffs.

Travis S. Hunter and Alexandra M. Ewing, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Jessica B. Pulliam, Thomas E. O'Brien, and Jordan Kazlow, BAKER BOTTS LLP, Dallas, TX, attorneys for Defendants.

November **26**, 2019


**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Defendants' motion to dismiss Plaintiffs' consolidated shareholder derivative action pursuant to Rules 23.1 and 12(b)(6) of the Federal Rules of Civil Procedure. (D.I. 21). Plaintiffs are stockholders of Zion Oil & Gas, Inc. (D.I. 19 at ¶¶25-29). Defendants are comprised of Zion and its directors. (*Id.* at ¶¶31-70). Plaintiffs bring claims for breaches of fiduciary duty, violations of Section 14(a) of the Securities Exchange Act of 1934, and unjust enrichment. (*Id.* at 1).[1] I have reviewed the parties' briefing in connection with the motion. (D.I. 19, 22, 24, 25). Because I find that Plaintiffs have not sufficiently demonstrated the futility of making a demand on the Zion Board of Directors prior to filing suit, I grant Defendants' motion to dismiss.

## I. BACKGROUND

Zion is an oil and gas exploration company founded in 2000 and licensed for petroleum exploration in Israel. (D.I. 19 at ¶94). Zion markets itself through promotions by popular Christian Zionist televangelists and religious leaders (*id.* at ¶100), and allows the public to purchase its stock through the company's Direct Stock Purchase Plan (*id.* at ¶3). In February and March of 2018, the company issued a series of statements indicating expectations of positive results from ongoing drilling operations. (*Id.* at ¶¶113-16, 133-34). Beginning March 26, 2018, a social media user and various news outlets reported that Zion was subject to an SEC investigation based on responses gathered from Freedom of Information Act requests. (*Id.* at

---

[1] Plaintiffs assert that subject matter jurisdiction exists as the Section 14(a) claims raise a federal question. (D.I. 19 at ¶21). Plaintiffs are right. Plaintiffs assert that supplemental jurisdiction exists over the two Delaware law claims. (*Id.*). I dismiss the two Delaware law claims for lack of demand, but, in the alternative, if demand were excused, I would decline to exercise supplemental jurisdiction over them. The way the operative complaint is written makes it pretty clear that the Section 14(a) claims are asserted merely as a thinly-pled basis for bringing the case in federal court.

1

¶¶126-30, 153). These reports were denied by Zion on March 27, 2018 and May 31, 2018. (*Id.* at ¶¶131, 148). On April 13, 2018, Zion filed a Proxy Statement with the SEC, which contained proposals to Zion's stockholders urging them to re-elect Board members and appoint an independent auditor, and described Zion's compensation policies and Board responsibilities. (*Id.* at ¶140; D.I. 23-1, Ex. 23). On July 11, 2018, Zion announced that it had received a subpoena from the SEC to produce documents as part of an investigation into the company. (D.I. 19 at ¶157). As of June 30, 2018, Zion had never had any revenues from its oil and gas production.[2] (*Id.* at ¶106).

In this shareholder derivative action, Plaintiffs bring claims for breach of Defendants' fiduciary duties as directors and/or officers of Zion, violations of Section 14(a) of the Securities Exchange Act of 1934, and unjust enrichment. (*Id.* at ¶180). Plaintiffs allege that starting on March 12, 2018, Defendants (1) caused Zion to fail to maintain internal controls, and (2) willfully or recklessly made or caused the company to make false and misleading statements about Zion's business, operations, prospects, and legal compliance. (*Id.* at ¶17). Plaintiffs allege that, under the direction and watch of the Defendants, and in violation of Section 14(a) of the Securities Exchange Act, the 2018 Proxy Statement failed to disclose that: (1) Zion used marketing tactics which violated SEC rules; (2) Zion's data provided no reasonable basis to expect that any of its discoveries would provide a commercially productive oil or gas source; (3) Zion's financial statements obscured that incoming funds were used primarily to compensate officers and directors; (4) Zion was under investigation by the SEC; and (5) Zion failed to maintain internal controls. (*Id.* at ¶211).

---

[2] The complaint does not allege that Zion ever stated it had had any revenues, and the complaint does not allege that any financial statements were false.

2

Plaintiffs assert that a pre-suit demand on the Board is futile and, therefore, excused, because a majority of Director-Defendants are not disinterested and face a substantial likelihood of liability. (*Id.* at ¶¶184-206).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 11. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [defendant] is

3

liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Rule 23.1

Pursuant to Rule 23.1(b)(3), a shareholder bringing a derivative action must file a verified complaint that states with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort. Derivative claims that do not comply with Fed. R. Civ. P. 23.1 must be dismissed.

Although Rule 23.1 provides the pleading standard for derivative actions in federal court, "the substantive rules for determining whether a plaintiff has satisfied that standard 'are a matter of state law.'" *King v. Baldino*, 409 F. App'x 535, 537 (3d Cir. 2010) (internal citations omitted). "Thus, federal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate [that] demand would have been futile and can be excused." *Kantor v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007).

If a shareholder does not first demand that the directors pursue the alleged cause of action, the shareholder must establish that demand is excused by satisfying "stringent [pleading] requirements of factual particularity," by "set[ting] forth particularized factual statements that are essential to the claim" in order to demonstrate that making a demand would be futile. *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009). "The purpose of the demand requirement is ... 'to preserve the primacy of board decision-making regarding legal claims belonging to the corporation.'" *Id.* (internal citation omitted).

4

In Delaware, the test for determining whether the "demand requirement" should be excused as futile is "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993) (quoting *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)).

In order to allege facts creating reasonable doubt as to whether "the directors are disinterested and independent," a plaintiff must show that a majority of the directors is either interested or not independent. *See, e.g., In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 363 (Del. Ch. 2008) (internal citation omitted). Under Delaware law, "[a] director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders." *Rales*, 634 A.2d at 936 (Del. 1993) (internal citation omitted). A director may also be "interested" if "a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Id.* A director is "independent" if his or her decision "is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816.

Courts have "repeatedly rejected" allegations that demand is excused because a majority of the directors "participated in and approved the alleged wrongs" and, therefore, would "have to sue themselves." *Lewis v. Fites,* 1993 WL 47842, at *3 (Del. Ch. 1993); *see also Jacobs v. Yang*, 2004 WL 1728521, at *6 n. 31 (Del. Ch. 2004); *Caruana v. Saligman*, 1990 WL 212304, at *4 (Del. Ch. 1990). Rather, demand will be excused based on a possibility of personal director liability only in the rare case when a plaintiff is able to show director conduct that is "so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists." *Aronson*, 473 A.2d at 815. Although

5

the mere threat of personal liability is insufficient to excuse demand, "plaintiffs are entitled to a reasonable inference of interestedness where a complaint indicates a 'substantial likelihood' of liability will be found." *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 990 (Del. Ch. 2007).

If the underlying transaction was not approved by a disinterested and independent board majority, demand is excused. If, on the other hand, it was so approved, the court moves to the second *Aronson* inquiry, whether plaintiffs have "alleged facts with particularity, which, if taken as true, support a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment." *Aronson*, 473 A.3d at 815. For example, plaintiffs might allege sufficiently that the directors were grossly negligent in approving a transaction. *Id.* at 812.

Delaware law furthermore permits a corporation to adopt a charter provision eliminating personal liability to the corporation or its stockholders for breaches of fiduciary duty that do not involve bad faith, disloyalty, or improper personal benefit. *See* DEL. CODE. ANN. TIT. 8 § 102(b)(7) (2019); *McMillan v. Intercargo Corp.*, 768 A.2d 492, 501 (Del. Ch. 2000). With respect to fiduciary claims, the presence of an exculpatory clause in a company's corporate charter means that "a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts." *Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003) (emphasis in original). Non-exculpable acts under this provision would include allegations of personally benefitting from wrongful conduct and the knowing issuance of misleading statements to benefit insiders. These two examples implicate violations of the duty of loyalty and facially constitute bad faith conduct, both of which are not exculpable.

To establish that demand is excused under Rule 23.1, the complaint must set forth "particularized factual statements." *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000). "A prolix

complaint larded with conclusory language ... does not comply with these fundamental pleading mandates." *Id.*

## III. DISCUSSION

Plaintiffs did not make a pre-suit demand on the board of Zion (D.I. 19 at ¶206), so they must show that demand is excused. Plaintiffs primarily argue that demand is excused because each of the Defendants "face[] individually and collectively, a substantial likelihood of liability as a result of the schemes they engaged in knowingly or recklessly." (*Id.* at ¶185). In moving to dismiss, Defendants argue that the complaint fails to plead with particularity that a majority of the Board at the time of suit lacked independence for the purpose of establishing demand futility. (D.I. 22 at 10).

Because Zion's corporate charter contains an exculpatory provision (D.I. 23-1, Ex. 1), to the extent Plaintiffs allege breaches of fiduciary duty, they must "plead[] facts supporting a rational inference that the director harbored self-interest adverse to the stockholders' interests, acted to advance the self-interest of an interested party from whom they could not be presumed to act independently, or acted in bad faith." *In re Cornerstone Therapeutics Inc., Stockholder Litig.*, 115 A.3d 1173, 1179-80 (Del. 2015). Plaintiffs must allege "particularized facts that demonstrate that the directors ... had 'actual or constructive knowledge' that their conduct was legally improper." *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008) (internal citations omitted); *see generally In re Massey Energy*, 2011 WL 2176479, at *16 (Del. Ch. 2011). "[A] failure to act in good faith requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (i.e., gross negligence)." *Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006). Non-exclusive examples of "failure to act in good faith" include situations where the fiduciary intentionally breaks the law, "where the fiduciary

7

intentionally acts with a purpose other than that of advancing the best interests of the corporation," or "where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *Id.*

### a. Breach of Fiduciary Duty

Plaintiffs argue that under the first prong of *Aronson*, demand is excused because (1) half of the Defendants on the Board are not disinterested because, in addition to being directors, they simultaneously were employed by Zion,[3] and (2) the majority of the Board breached its fiduciary duties through the issuance of misleading public statements, thereby exposing them to liability. (D.I. 24 at 13). Plaintiffs argue that "because they personally received as compensation funds raised directly from retail investors" in Zion's stock promotion scheme, "six directors would be interested in a demand regarding the improper stock promotions." (D.I. 21 at 14).

I agree with Defendants that simple allegations that a director is also employed by the company, without more, are insufficient to show that director lacks independence. *See Grobow* 539 A.2d at 188; *In re Sagent Tech., Inc., Deriv. Litig.*, 278 F.Supp.2d 1079, 1089 (N.D. Cal. 2003) ("If [allegations that directors were employees] were sufficient to show lack of independence, every inside director would be disabled from considering a pre-suit demand.") (applying Delaware law); *Caviness v. Evans*, 229 F.R.D. 354, 361 (D. Mass. 2005) (rejecting allegation that the company CEO who also served on the board of directors lacked independence based on the "substantial monetary compensations" he received from the company) (relying on

---

[3] Under the first prong of *Aronson*, demand is excused where half or more of the Board is interested in a demand. *See, e.g., Ryan v. Gifford*, 918 A.2d 341, 353 (Del. Ch. 2007). Plaintiffs seek leave to amend, "[i]f the Court were to grant Defendants' motion to dismiss on the basis of demand futility," on the basis that the Complaint incorrectly alleges that Zion's Board consisted of thirteen, rather than twelve, individuals at the time the action was filed. (D.I. 24 at 11, n. 5). My analysis would reach the same conclusion whether the Board had twelve or thirteen members.

8

*Sagent* and applying Delaware law). Plaintiffs have not pleaded facts that demonstrate that Defendants' employment or compensation have resulted in a particular benefit or detriment the Defendants could expect as a result of a Board decision on Plaintiffs' demand.

Plaintiffs also contend that a majority of the Board is not disinterested because it faces substantial likelihood of liability for breach of fiduciary duty. (D.I. 24 at 16). Plaintiffs contend that because, "as insiders," the six Board members who were employed by Zion "would have had access to information regarding the commercial productivity" of the single oil well around which Zion's core business operated, "[i]t is reasonable to infer that the Board ... would have known that [the well] was not commercially productive." (*Id.*). Plaintiffs argue that in light of this inference, Defendants knowingly issued statements misrepresenting Zion's prospects of generating revenue from the well and about the existence of an SEC investigation, thereby subjecting them to a substantial likelihood of liability. (*Id.* at 18).

I do not find these "inferences" of knowledge to be supported by particularized facts as required by Rule 23.1. Plaintiffs do not allege specific facts to demonstrate that Defendants knew about the SEC investigation prior to the date that they disclosed that Zion had received a subpoena from the SEC, or that the oil well would not be commercially successful. *See Malone v. Brincat*, 722 A.2d 5, 14 (Del. 1998) (affirming dismissal where the complaint alleged without sufficient particularity a "violation of fiduciary duty by directors in knowingly disseminating materially false information.").

Plaintiffs offer additional reasons to demonstrate that a majority of Zion's Board at the time of suit would have been unable disinterestedly and independently to consider a demand by shareholders, including large company stock holdings, business and personal relationships, and Board leadership positions. I do not find the argument that eleven directors are not disinterested

9

or independent due to their large stock holdings persuasive. A lack of independence is not shown when directors stand to benefit "on the same terms as any other shareholder." *In re Ply Gem Indus. S'holders Litig.*, 2001 WL 755133, at *7 (Del. Ch. 2001).

Nor do I find the assertion that Defendants are "beholden to each other" and "have longstanding business and personal relationships" satisfactory to excuse demand. (D.I. 19 at ¶20). Under Delaware law, directors are entitled to the presumption that they are independent. *Beam v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004). To rebut the presumption of independence, a derivative plaintiff must allege specific facts showing that the director is beholden to another interested director. *In re Dow Chem. Co. Deriv. Litig.*, 2010 WL 66769, at *8 (Del. Ch. 2010) ("[W]ithout an interested director the independence of the remaining directors need not be examined."). I agree with Defendants that Plaintiffs do not draw the necessary connections between any of the Defendants' relationships to Zion, or each other, and their ability independently to consider Plaintiffs' claims.

Plaintiffs argue that demand is also excused under the second prong of *Aronson*, which asks whether a transaction was otherwise the product of a valid exercise of business judgment. *Aronson*, 473 A.2d at 814-15. The business judgment presumption is rebutted when directors act in bad faith, which exists where a director acts with "intentional dereliction of duty" or "conscious disregard" for their responsibilities. *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 66 (Del. 2006). Plaintiffs state that Defendants chose to continue issuing positive disclosures in spite of their knowledge that the oil well was not commercially viable and allege that Zion was improperly engaging paid stock promoters. (D.I. 24 at 20). Plaintiffs fail to put forth any particularized factual basis upon which to determine that Defendants knew that the well was not commercially viable, nor do they refer to specific laws of which the stock promoters were

running afoul. Therefore, I do not find that Plaintiffs have demonstrated demand futility on their claim for breach of fiduciary duty.

### b. Section 14(a)

The complaint is 72 pages long.[4] Its treatment of the Section 14(a) claims is surprisingly brief. On page 45 of the complaint, there are two paragraphs totaling three sentences devoted to an April 13, 2018, proxy statement. The paragraphs do not state what the proxy statement concerned, and state almost nothing about what was in the proxy statement. The first paragraph does list five categories of items that the proxy statement "failed to disclose." (D.I. 19 at ¶140). There is no allegation that the failure to disclose made any particular statement in the proxy statement false or misleading.

The one sentence of the second paragraph states, "the 2018 Proxy Statement was false and misleading in stating that [Zion's] Code of [Business] Conduct [and Ethics] applies to the Company's directors, officers and all employees, due to the Individual Defendants' failures to abide by it." (*Id.* at ¶141). This declaration is not enough to state a claim with sufficient particularity. Three pages of the complaint set forth, single-spaced, various provisions of the Code. (*Id.* at ¶¶89-92). The complaint alleges four violations of the Code. They are: (1) a failure to conduct sufficient "oversight of the Company's internal controls over public reporting and of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and disguise the Individual Defendants' violations of law,"

---

[4] My impression in securities cases is that once a certain minimum length is exceeded (which can vary with the nature of the allegations), excess length represents an attempt by a plaintiff to overwhelm the Court with verbiage, *see OFI Asset Management v. Cooper Tire & Rubber*, 834 F.3d 481, 491-92 (3d Cir. 2016), so that the Court's conclusion on a motion to dismiss is that there's a lot of smoke and so there must also be a fire. The complaint here is an example. Nearly thirteen pages of the complaint is a recitation of the backgrounds of Defendants, including the entire description of each Defendant as set forth in the 2018 Proxy Statement.

11

(2) a failure to "maintain the accuracy of Company records and reports," (3) a failure to "comply with laws and regulations," and (4) a failure properly to "report violations of the Code of Conduct." (*Id.* at ¶93). The complaint fails to identify any specific actions by Defendants to explain how they violated the Code provisions. If Plaintiffs' theory of their complaint is sounded in fraud, based on their allegation that the proxy statement was "false and misleading," then the claims clearly are insufficiently pled. If Plaintiffs' claim is sounded in negligence, then it is exculpated. *See* D.I. 19 at ¶ 208; *Guttman*, 823 A.2d at 501. In both cases, generalized violations of the Code of Conduct, are insufficient, without more, to allege that the proxy statement is false and misleading.

The Section 14(a) claims incorporate the first 66 pages by reference, state that the Section 14(a) claims are "based solely on negligence," quote portions of Section 14(a) and SEC Rule 14a-9, repeat the two paragraphs from page 45, and, in three more sentences, allege that Defendants "should have known" that "the statements" in the proxy statement were "materially false and misleading," that the statements were material to "matters set forth" in the proxy statement, "including election of directors and appointment of an independent auditor," and that Zion was damaged as a result. (D.I. 19 at ¶¶207-14).

In the section of the complaint addressing excusal of demand, the proxy statement is mentioned specifically only to state that it describes five of the Defendants as being "non-independent directors." (*Id.* at ¶¶187-91).

Section 14(a) was enacted to "prevent management or others from obtaining authorization for corporate actions by means of deceptive or inadequate disclosures in proxy solicitations." *Seinfeld v. Becherer*, 461 F.3d 365, 369 (3d Cir. 2006). To plead a violation of Section 14(a), Plaintiffs must allege: "(1) a proxy statement contained a material

misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007) (internal quotation omitted). An omission in a proxy statement is only actionable where "there is substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Seinfeld*, 461 F.3d at 369.

Section 14(a) claims are also subject to the demand requirement. *See In re The Home Depot, Inc. S'holder Deriv. Litig.*, 223 F. Supp. 3d 1317, 1329 (N.D. Ga. 2016); *St. Clair Shores Gen. Emps' Ret. Sys. v. Eibeler*, 2006 WL 2849783, at *4-6 (S.D.N.Y. Oct. 4, 2006) (holding that Section 14(a) claims are subject to the demand requirement); *Bader v. Blankfein*, 2008 WL 5274442, at *5-7 (E.D.N.Y. Dec. 19, 2008) (collecting cases). Plaintiffs' complaint here does not demonstrate demand futility as to the Section 14(a) claims against Defendants. *See Home Depot*, 223 F. Supp. 3d at 1329-32 (dismissing Section 14(a) claim for failure to plead demand futility where Plaintiffs had not pleaded the substantive claim sufficiently to suggest a substantial likelihood of liability and had not pleaded damages caused by the alleged violation) (applying Delaware law); *see also New Jersey Bldg. Laborers Pension Fund v. Ball*, 2014 WL 1018210, at *6 (D. Del. Mar. 13, 2014); *Abrams v. Wainscott*, 2012 WL 3614638, at *3 (D. Del. Aug. 21, 2012); *Bartlinski v. Sanchez*, 39 F. Supp. 3d 862, 868 (S.D. Tex. 2014) (applying Delaware law).

First, Plaintiffs fail sufficiently to plead a violation of Section 14(a) of the Securities Exchange Act to show a substantial likelihood of liability for the purposes of demand futility.[5]

---

[5] The standard for pleading a negligent violation of Section 14(a) is that established by Fed. R. Civ. P. Rule 8(a)(2). *See Jaroslawicz v. M&T Corp.*, 2017 WL 1197716 (D. Del. Mar. 30, 2017), appeal pending, No. 17-3695 (3d Cir.). I have held that the PSLRA does not apply to a negligence-based Section 14(a) claim. *See id.* at *4. Other courts have come to different

13

*See INFOUSA*, 953 A.2d at 990 ("plaintiffs are entitled to a reasonable inference of interestedness where a complaint indicates a 'substantial likelihood' of liability will be found."). Plaintiffs allege five omissions in the Proxy, including: Zion's stock promotion misconduct, the company's lack of evidence supporting an expectation that its oil well would be commercially productive, the company's financial statements "obscur[ing] that it channeled most of its incoming funds" toward its own officers and "further market fundraising campaigns," that Zion "was, or was soon going to be, the subject of an SEC investigation," and information regarding the company's "failure to maintain internal controls." (D.I. 19 at ¶211). For none of these allegations do Plaintiffs plead or otherwise point out any statements in the proxy statement that are made misleading by the omission of these matters. Indeed, for most of the five omissions, Plaintiffs plead at such a general level that I cannot say that the statement of the omission is even plausible. For example, Plaintiffs do not specify what Zion should have said about its expectations for success. How do the financial statements obscure how much the directors are paid, or how those amounts compare to revenue or capital? What internal controls are not maintained? How was Zion supposed to know that it would be at some undefined point in the future the subject of an SEC investigation? The only item that is addressed with any specificity is the stock promotion omission. Plaintiffs allege that twelve years ago a person promoted the stock without mentioning his ownership or relationship to a Board member. (D.I. 19 at ¶100). Plaintiffs allege a different individual at some unspecified time was a paid promoter who used his own website to "promote" the company. (*Id.* at ¶¶100, 117). This is described as "an inappropriate marketing tactic." (*Id.* at ¶117). None of these allegations are pleaded with

---

conclusions. *E.g.*, *Home Depot*, 223 F. Supp. 3d 1317. Regardless, the assertion that demand is excused requires the particularity that is not otherwise required by *Jaroslawicz*.

14

sufficient factual detail to demonstrate their materiality in light of the three-step analysis outlined by the Third Circuit. *See Tracinda Corp.*, 502 F.3d at 228. Given that the agenda for the annual meeting noticed by the Proxy Statement focused on the election of directors and ratification of the appointment of Zion's accounting firm (D.I. 23-1, Ex. 23), Plaintiffs fail to allege how the information omitted from the Proxy would have been material to a shareholder in deciding how to vote on these issues. *See Seinfeld*, 461 F.3d at 369; D.I. 19 at ¶211-14.

Second, I find that Plaintiffs have not alleged Section 14(a) damages for which the individual Defendants could be personally liable. *See In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) ("When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption."). Plaintiffs allege that Defendants have cost Zion legal fees associated with a Securities Class Action suit, compensation paid to the Defendants while they were breaching their fiduciary duties, and a "liar's discount" that will lower the value of the company's stock in the future due to Defendants' misrepresentations and breaches of fiduciary duties. (D.I. 19 at ¶¶18, 177-79). Plaintiffs also allege that because the 2018 Proxy Statement sought stockholder votes on the basis of concealed material information and disclosures the Board knew to be untrue, the decision to issue the Proxy was therefore not a valid exercise of business judgment. (D.I. 24 at 23). The complaint asserts these allegations in a conclusory manner, however, and fails to offer facts that would support a demonstration of bad faith. (D.I. 19 at ¶¶202, 225); *see Citigroup*, 964 A.2d at 123 ("[A] showing of bad faith is a *necessary condition* to director oversight liability.") (emphasis in original).

The complaint does not allege specific facts to support a reasonable inference of bad faith, intentional misconduct, knowing violation of the law, or any other conduct for which the directors may be liable. *See Baxter*, 654 A.2d at 1270. Indeed, the complaint asserts exactly the opposite: "The Section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants." (D.I. 19 at ¶208). Plaintiffs do not argue any other basis to conclude anything other than that the Section 14(a) claims are exculpated claims. Thus, Plaintiffs have not alleged Section 14(a) damages for which the individual Defendants could be personally liable such that the claims for relief against the Defendants are pleaded with particularity.

Therefore, I do not find that Plaintiffs have demonstrated demand futility on their claims arising under Section 14(a) of the Securities Exchange Act.

### c. Unjust Enrichment

Plaintiffs' claim for unjust enrichment is predicated on a finding of liability for either alleged Section 14(a) violations or the alleged breaches of fiduciary duty. (D.I. 19 at ¶¶229-30). I find Plaintiffs' assertions that "Zion had no viable plan to ever earn any revenue, omitted material information about its operations, employed illegal faith-based stock promoters, and primarily received funding under false pretenses by exploiting investors," to be insufficiently supported by particularized facts. Because Plaintiffs have not adequately pleaded demand futility, and have failed to support their contentions for breach of fiduciary duty and violation of Section 14(a) of the Securities Exchange Act, I cannot find that Plaintiffs have demonstrated demand futility on their claim for unjust enrichment.

In sum, I find that Plaintiffs have not sufficiently demonstrated the futility of making a demand on the Zion Board of Directors prior to filing suit, as required by Federal Rule of Civil Procedure 23.1.

## IV. CONCLUSION

The essence of Plaintiffs' complaint appears to be that I should hold Director Defendants "personally liable for making (or allowing to be made) business decisions that, in hindsight, turned out poorly for the Company." *In re Goldman Sachs Group, Inc. S'holder Litig.*, 2011 WL 4826104, at *22 (Del. Ch. 2011). "If an actionable duty to monitor business risk exists, it cannot encompass any substantive evaluation by a court of a board's determination of the appropriate amount of risk. Such decisions plainly involve business judgment." *Id.* I do not find that the Plaintiffs have pleaded with particularity any facts that suggest that Director Defendants acted in bad faith or otherwise consciously disregarded their oversight responsibilities in regard to Zion's prospects for discovery and extraction of oil.

For the reasons discussed above, Defendants' Motion to Dismiss (D.I. 21) is **GRANTED**. An accompanying order will be entered.